**EXHIBIT "A"**


# CentrevilleBank®

## TABLE OF CONTENTS

**TERMS AND CONDITIONS OF YOUR ACCOUNT** ..........................................1
Important Account Opening Information ................................................1
Agreement ...............................................................................................1
Liability ....................................................................................................1
Deposits ..................................................................................................1
Withdrawals ............................................................................................2
Understanding and Avoiding Overdraft
   and Nonsufficient Funds (NSF) Fees ...................................................2
Ownership Of Account and Beneficiary Designation .............................3
Business, Organization and Association Accounts ................................3
Stop Payments .......................................................................................3
Transfer Limitations ...............................................................................3
ATM Transactions ..................................................................................3
Amendments and Termination ..............................................................3
Notices ...................................................................................................3
Statements ............................................................................................4
Electronic Statements ...........................................................................4
Account Transfer ...................................................................................4
Direct Deposits ......................................................................................4
Temporary Account Agreement ............................................................4
Setoff .....................................................................................................4
Agency (Power of Attorney) Designation .............................................4
Restrictive Legends or Indorsements ..................................................4
Check Processing .................................................................................4
Check Cashing ......................................................................................4
Waiver of Notices .................................................................................4
ACH and Wire Transfers ......................................................................4
Restricted or Blocked Transactions ...................................................4
Facsimile Signatures ...........................................................................4
Pledges .................................................................................................5
Power of Attorney ................................................................................5
Stale-Dated Checks .............................................................................5
FDIC Insurance .....................................................................................5
Indorsements .......................................................................................5
Unclaimed Property .............................................................................5
Death or Incompetence .......................................................................5
Fiduciary Accounts ..............................................................................5
Cash Transaction Reporting ................................................................5
Backup Withholding/TIN Certification .................................................5
Credit Verification ................................................................................5
Lost, Destroyed, or Stolen Certified, Cashier's,
   or Teller's Checks .............................................................................5
Changing Account Products ................................................................6
Legal Actions Affecting Your Account .................................................6
Check Storage and Copies ..................................................................6
Truncation, Substitute Checks, and Other Check Images ..................6
Account Security .................................................................................6
Unlawful Internet Gambling Notice .....................................................6
Telephonic Instructions .......................................................................6
Monitoring and Recording Telephone Calls
   and Consent to Receive Communications .......................................6
Email Instructions ..............................................................................6
Claim of Loss .....................................................................................6
Early Withdrawal Penalties ................................................................6
Address or Name Changes ...............................................................6
Resolving Account Disputes .............................................................7
UTMA Accounts .................................................................................7
Transactions by Mail ..........................................................................7
Funds Transfers .................................................................................7
International ACH Transactions ........................................................8
**YOUR ABILITY TO WITHDRAW FUNDS** ........................................8

## TERMS AND CONDITIONS OF YOUR ACCOUNT

**IMPORTANT ACCOUNT OPENING INFORMATION -** Federal law requires us to obtain sufficient information to verify your identity. You may be asked several questions and to provide one or more forms of identification to fulfill this requirement. In some instances we may use outside sources to confirm the information. The information you provide is protected by our privacy policy and federal law. In an effort to fight identity theft, we reserve the right to photocopy or electronically scan and store one or more forms of your identification.

**AGREEMENT -** This document, along with any other documents we give you pertaining to your account(s), is a contract that establishes rules which control your account(s) with us. Please read this carefully and retain it for future reference. If you sign the signature card or open or continue to use the account, you agree to these rules. You will receive a separate schedule of rates, qualifying balances, and fees if they are not included in this document. If you have any questions, please call us.

This agreement is subject to applicable federal laws, the laws of the state of Rhode Island and other applicable rules such as the operating letters of the Federal Reserve Banks and payment processing system rules (except to the extent that this agreement can and does vary such rules or laws). The body of state and federal law that governs our relationship with you, however, is too large and complex to be reproduced here. The purpose of this document is to:
(1) summarize some laws that apply to common transactions;
(2) establish rules to cover transactions or events which the law does not regulate;
(3) establish rules for certain transactions or events which the law regulates but permits variation by agreement; and
(4) give you disclosures of some of our policies to which you may be entitled or in which you may be interested.

If any provision of this document is found to be unenforceable according to its terms, all remaining provisions will continue in full force and effect. We may permit some variations from our standard agreement, but we must agree to any variation in writing either on the signature card for your account or in some other document. Nothing in this document is intended to vary our duty to act in good faith and with ordinary care when required by law.

As used in this document the words "we," "our," and "us" mean the financial institution Centreville Bank, and the words "you" and "your" mean the account holder(s) and anyone else with the authority to deposit, withdraw, or exercise control over the funds in the account. However, this agreement does not intend, and the terms "you" and "your" should not be interpreted, to expand an individual's responsibility for an organization's liability. If this account is owned by a corporation, partnership or other organization, individual liability is determined by the laws generally applicable to that type of organization. The headings in this document are for convenience or reference only and will not govern the interpretation of the provisions. Unless it would be inconsistent to do so, words and phrases used in this document should be construed so the singular includes the plural and the plural includes the singular. "Party" means a person who, by the terms of an account, has a present right, subject to request, to payment from the account other than as a beneficiary or agent.

**LIABILITY -** You agree, for yourself (and the person or entity you represent if you sign as a representative of another) to the terms of this account and the schedule of charges. You authorize us to deduct these charges, without notice to you, directly from the account balance as accrued. You will pay any additional reasonable charges for services you request which are not covered by this agreement.

Each of you also agrees to be jointly and severally (individually) liable for any account shortage resulting from charges or overdrafts, whether caused by you or another with access to this account. This liability is due immediately, and we can deduct any amounts deposited into the account and apply those amounts to the shortage. You have no right to defer payment of this liability, and you are liable regardless of whether you signed the item or benefited from the charge or overdraft.

You will be liable for our costs as well as for our reasonable attorneys' fees, to the extent permitted by law, whether incurred as a result of collection or in any other dispute involving your account. This includes, but is not limited to, disputes between you and another joint owner; you and an authorized signer or similar party; or a third party claiming an interest in your account. This also includes any action that you or a third party takes regarding the account that causes us, in good faith, to seek the advice of an attorney, whether or not we become involved in the dispute. All costs and attorneys' fees can be deducted from your account when they are incurred, without notice to you.

**DEPOSITS -** We will give only provisional credit until collection is final for any items, other than cash, we accept for deposit (including items drawn "on us"). Before settlement of any item becomes final, we act only as your agent, regardless of the form of indorsement or lack of indorsement on the item and even though we provide you provisional credit for the item. We may reverse any provisional credit for items that are lost, stolen, or returned. Unless prohibited by law, we also reserve the right to charge back to your account the amount of any item deposited to your account or cashed for you which was initially paid by the payor bank and which is later returned to us due to an

# Centreville Bank®

allegedly forged, unauthorized or missing indorsement, claim of alteration, encoding error, counterfeit cashier's check or other problem which in our judgment justifies reversal of credit. You authorize us to attempt to collect previously returned items without giving you notice, and in attempting to collect we may permit the payor bank to hold an item beyond the midnight deadline. Actual credit for deposits of, or payable in, foreign currency will be at the exchange rate in effect on final collection in U.S. dollars. We are not responsible for transactions by mail or outside depository until we actually record them. If you deliver a deposit to us and you will not be present when the deposit is counted, you must provide us an itemized list of the deposit (deposit slip). To process the deposit, we will verify and record the deposit, and credit the deposit to the account. You will be entitled to credit only for the actual deposit as determined by us, regardless of what is stated on the itemized deposit slip. We will treat and record all transactions received after our "daily cutoff time" on a business day we are open, or received on a day we are not open for business, as if initiated on the next business day that we are open. At our option, we may take an item for collection rather than for deposit. If we accept a third-party check or draft for deposit, we may require any third-party indorsers to verify or guarantee their indorsements, or indorse in our presence.

**WITHDRAWALS -**

**Generally -** Unless clearly indicated otherwise on the account records, any of you, acting alone, who signs to open the account or has authority to make withdrawals may withdraw or transfer all or any part of the account balance at any time. Each of you (until we receive written notice to the contrary) authorizes each other person who signs or has authority to make withdrawals to indorse any item payable to you or your order for deposit to this account or any other transaction with us.

**Postdated checks -** A postdated check is one which bears a date later than the date on which the check is written. We may properly pay and charge your account for a postdated check even though payment was made before the date of the check, unless we have received written notice of the postdating in time to have a reasonable opportunity to act. Because we process checks mechanically, your notice will not be effective and we will not be liable for failing to honor your notice unless it precisely identifies the number, date, amount and payee of the item.

**Checks and withdrawal rules -** If you do not purchase your check blanks from us, you must be certain that we approve the check blanks you purchase. We may refuse any withdrawal or transfer request which you attempt on forms not approved by us or by any method we do not specifically permit. We may refuse any withdrawal or transfer request which is greater in number than the frequency permitted, or which is for an amount greater or less than any withdrawal limitations. We will use the date the transaction is completed by us (as opposed to the date you initiate it) to apply the frequency limitations. In addition, we may place limitations on the account until your identity is verified. Even if we honor a nonconforming request, we are not required to do so later. If you violate the stated transaction limitations (if any), in our discretion we may close your account or reclassify it as a transaction account. If we reclassify your account, your account will be subject to the fees and earnings rules of the new account classification.

If we are presented with an item drawn against your account that would be a "substitute check," as defined by law, but for an error or defect in the item introduced in the substitute check creation process, you agree that we may pay such item.

**Cash withdrawals -** We recommend you take care when making large cash withdrawals because carrying large amounts of cash may pose a danger to your personal safety. As an alternative to making a large cash withdrawal, you may want to consider a cashier's check or similar instrument. You assume full responsibility of any loss in the event the cash you withdraw is lost, stolen, or destroyed. You agree to hold us harmless from any loss you incur as a result of your decision to withdraw funds in the form of cash.

**Multiple signatures, electronic check conversion, and similar transactions -** An electronic check conversion transaction is a transaction where a check or similar item is converted into an electronic fund transfer as defined in the Electronic Fund Transfers regulation. In these types of transactions the check or similar item is either removed from circulation (truncated) or given back to you. As a result, we have no opportunity to review the signatures or otherwise examine the original check or item. You agree that, as to these or any items as to which we have no opportunity to examine the signatures, you waive any requirement of multiple signatures.

**Notice of withdrawal -** We reserve the right to require not less than 7 days' notice in writing before each withdrawal from an interest-bearing account other than a time deposit or demand deposit, or from any other savings account as defined by Regulation D. (The law requires us to reserve this right, but it is not our general policy to use it.) Withdrawals from a time account prior to maturity or prior to any notice period may be restricted and may be subject to penalty. See your notice of penalty for early withdrawal.

**UNDERSTANDING AND AVOIDING OVERDRAFT AND NONSUFFICIENT FUNDS (NSF) FEES -**

**Generally -** The information in this section is being provided to help you understand what happens if your account is overdrawn. Understanding the concepts of overdrafts and nonsufficient funds (NSF) is important and can help you avoid being assessed fees or charges. This section also provides contractual terms relating to overdrafts and NSF transactions.

An overdrawn account will typically result in you being charged an overdraft fee or an NSF fee. Generally, an overdraft occurs when there is not enough money in your account to pay for a transaction, but we pay (or cover) the transaction anyway. An NSF transaction is slightly different. In an NSF transaction, we do not cover the transaction. Instead, the transaction is rejected and the item or requested payment is returned. In either situation, we can charge you a fee.

If you use our Overdraft Protection Plan and we cover a transaction for which there is not enough money in your account to pay, we will consider that an overdraft. We treat all other transactions for which there is not enough money in your account as an NSF transaction, regardless of whether we cover the transaction or the transaction is rejected.

**Determining your available balance -** We use the "available balance" method to determine whether your account is overdrawn, that is, whether there is enough money in your account to pay for a transaction. Importantly, your "available" balance may not be the same as your account's "actual" balance. This means an overdraft or an NSF transaction could occur regardless of your account's actual balance.

Your account's actual balance (sometimes called the ledger balance) only includes transactions that have settled up to that point in time, that is, transactions (deposits and payments) that have posted to your account. The actual balance does not include outstanding transactions (such as checks that have not yet cleared and electronic transactions that have been authorized but which are still pending). The balance on your periodic statement is the ledger balance for your account as of the statement date.

As the name implies, your available balance is calculated based on the money "available" in your account to make payments. In other words, the available balance takes transactions that have been authorized, but not yet settled, and subtracts them from the actual balance. In addition, when calculating your available balance, any "holds" placed on deposits that have not yet cleared are also subtracted from the actual balance. For more information on how holds placed on funds in your account can impact your available balance, read the subsection titled "A temporary debit authorization hold affects your account balance."

**Overdrafts -** You understand that we may, at our discretion, honor withdrawal requests that overdraw your account. However, the fact that we may honor withdrawal requests that overdraw the account balance does not obligate us to do so later. So you can NOT rely on us to pay overdrafts on your account regardless of how frequently or under what circumstances we have paid overdrafts on your account in the past. We can change our practice of paying, or not paying, discretionary overdrafts on your account without notice to you. You can ask us if we have other account services that might be available to you where we commit to paying overdrafts under certain circumstances, such as an overdraft protection line-of-credit or a plan to sweep funds from another account you have with us. You agree that we may charge fees for overdrafts. For consumer accounts, we will not charge fees for overdrafts caused by ATM withdrawals or one-time debit card transactions if you have not opted-in to that service. We may use subsequent deposits, including direct deposits of social security or other government benefits, to cover such overdrafts and overdraft fees.

**Nonsufficient funds (NSF) fees -** If an item drafted by you (such as a check) or a transaction you set up (such as a preauthorized transfer) is presented for payment in an amount that is more than the amount of money available in your account, and we decide not to pay the item or transaction, you agree that we can charge you an NSF fee for returning the payment. Be aware that such an item or payment may be presented multiple times and that we do not monitor or control the number of times a transaction is presented for payment. You agree that we may charge you an NSF fee each time a payment is presented if the amount of money available in your account is not sufficient to cover the payment, regardless of the number of times the payment is presented.

**Payment types -** Some, but not necessarily all, of the ways you can access the funds in your account include debit card transactions, automated clearing house (ACH) transactions, and check transactions. All these payment types can use different processing systems and some may take more or less time to post. This information is important for a number of reasons. For example, keeping track of the checks you write and the timing of the preauthorized payments you set up will help you to know what other transactions might still post against your account. For information about how and when we process these different payment types, see the "Payment order of items" subsection below.

**Balance information -** Keeping track of your balance is important. You can review your balance in a number of ways including reviewing your periodic statement, reviewing your balance online, accessing your account information by phone, or coming into one of our branches.

**Funds availability -** Knowing when funds you deposit into your checking account will be made available for withdrawal is another important concept that can help you avoid being assessed fees or charges. Please see our funds availability disclosure for information on when different types of deposits will be made available for withdrawal. For those accounts to which our funds availability policy disclosure does not apply, you can ask us when you make a

# CentrevilleBank®

deposit when those funds will be available for withdrawal. An item may be returned after the funds from the deposit of that item are made available for withdrawal. In that case, we will reverse the credit of the item. We may determine the amount of available funds in your account for the purpose of deciding whether to return an item for insufficient funds at any time between the times we receive the item and when we return the item or send a notice in lieu of return. We need only make one determination, but if we choose to make a subsequent determination, the account balance at the subsequent time will determine whether there are insufficient available funds.

**A temporary debit authorization hold affects your account balance -** On debit card purchases, merchants may request a temporary hold on your account for a specified sum of money when the merchant does not know the exact amount of the purchase at the time the card is authorized. The amount of the temporary hold may be more than the actual amount of your purchase. Some common transactions where this occurs involve purchases of gasoline, hotel rooms, or meals at restaurants. When this happens, our processing system cannot determine that the amount of the hold exceeds the actual amount of your purchase. This temporary hold, and the amount charged to your account, will eventually be adjusted to the actual amount of your purchase, but it could be three calendar days, or even longer in some cases, before the adjustment is made. Until the adjustment is made, the amount of funds in your account available for other transactions will be reduced by the amount of the temporary hold. If another transaction is presented for payment in an amount greater than the funds left after the deduction of the temporary hold amount, you will be charged an NSF or overdraft fee according to our NSF or overdraft fee policy. You will be charged the fee even if you would have had sufficient funds in your account if the amount of the hold had been equal to the amount of your purchase.

**Payment order of items -** The order in which items are paid is important if there is not enough money in your account to pay all of the items that are presented. The payment order can affect the number of items overdrawn or returned unpaid and the amount of the fees you may have to pay. To assist you in managing your account, we are providing you with the following information regarding how we process those items.

Our policy is to process ATM/POS items first, in the order they are received on the day they are processed. We process checks and ACH items second, in the order they are received, by dollar amount - smallest to largest on the day they are processed.

If a check, item or transaction is presented without sufficient funds in your account to pay it, you will be charged an NSF or overdraft fee according to our NSF or overdraft fee policy. We will not charge you a fee for paying an overdraft of an ATM or one-time debit card transaction if this is a consumer account and you have not opted-in to that service. The amounts of the overdraft and NSF fees are disclosed elsewhere, as are your rights to opt in to overdraft services for ATM and one-time debit card transactions, if applicable. We encourage you to make careful records and practice good account management. This will help you to avoid creating items without sufficient funds and potentially incurring the resulting fees.

**OWNERSHIP OF ACCOUNT AND BENEFICIARY DESIGNATION -** These rules apply to this account depending on the form of ownership and beneficiary designation, if any, specified on the account records. We reserve the right to refuse some forms of ownership on any or all of our accounts. We make no representations as to the appropriateness or effect of the ownership and beneficiary designations, except as they determine to whom we pay the account funds.

**Single-Party Account -** Such an account is owned by one party.

**Multiple-Party Account -** Parties own account in proportion to net contributions unless there is clear and convincing evidence of a different intent.

**RIGHTS AT DEATH - Single-Party Account -** At the death of a party, ownership passes as part of the party's estate.

**Multiple-Party Account With Right of Survivorship -** At death of party, ownership passes to surviving parties. If two or more parties survive and one is the surviving spouse of the deceased party, the amount to which the deceased party, immediately before death, was beneficially entitled by law belongs to the surviving spouse. If two or more parties survive and none is the spouse of the decedent, the amount to which the deceased party, immediately before death, was beneficially entitled by law belongs to the surviving parties in equal shares, and augments the proportion to which each surviving party, immediately before the deceased party's death, was beneficially entitled under law, and the right of survivorship continues between the surviving parties.

**Multiple-Party Account Without Right of Survivorship -** At death of party, deceased party's ownership passes as part of deceased party's estate.

**Single-Party Account With Pay-on-Death Designation -** At death of the party, ownership passes to the designated pay-on-death beneficiaries and is not part of the party's estate.

**Multiple-Party Account With Right of Survivorship and Pay-on-Death Designation -** At death of last surviving party, ownership passes to the designated pay-on-death beneficiaries and is not part of the last surviving party's estate.

**BUSINESS, ORGANIZATION AND ASSOCIATION ACCOUNTS -** Earnings in the form of interest, dividends, or credits will be paid only on collected funds, unless otherwise provided by law or our policy. You represent that you have the authority to open and conduct business on this account on behalf of the entity. We may require the governing body of the entity opening the account to give us a separate authorization telling us who is authorized to act on its behalf. We will honor the authorization until we actually receive written notice of a change from the governing body of the entity.

**STOP PAYMENTS -** Unless otherwise provided, the rules in this section cover stopping payment of items such as checks and drafts. Rules for stopping payment of other types of transfers of funds, such as consumer electronic fund transfers, may be established by law or our policy. If we have not disclosed these rules to you elsewhere, you may ask us about those rules.

We may accept an order to stop payment on any item from any one of you. You must make any stop-payment order in the manner required by law and we must receive it in time to give us a reasonable opportunity to act on it before our stop-payment cutoff time. Because stop-payment orders are handled by computers, to be effective, your stop-payment order must precisely identify the number, date, and amount of the item, and the payee. You may stop payment on any item drawn on your account whether you sign the item or not. Generally, if your stop-payment order is given to us in writing or electronically it is effective for six months. Your order will lapse after that time if you do not renew the order in writing or electronically before the end of the six-month period. If the original stop-payment order was oral your stop-payment order will lapse after 14 calendar days if you do not confirm your order in writing or electronically within that time period. We are not obligated to notify you when a stop-payment order expires.

If you stop payment on an item and we incur any damages or expenses because of the stop payment, you agree to indemnify us for those damages or expenses, including attorneys' fees. You assign to us all rights against the payee or any other holder of the item. You agree to cooperate with us in any legal actions that we may take against such persons. You should be aware that anyone holding the item may be entitled to enforce payment against you despite the stop-payment order.

Our stop-payment cutoff time is one hour after the opening of the next banking day after the banking day on which we receive the item. Additional limitations on our obligation to stop payment are provided by law (e.g., we paid the item in cash or we certified the item).

**TRANSFER LIMITATIONS -** For savings accounts you may make up to six transfers or withdrawals by means of a preauthorized, automatic, computer or telephonic transfer to another account of yours or to a third party or by check, debit card, or similar order to a third party during any calendar month (or statement cycle of at least four weeks). A preauthorized transfer includes any arrangement with us to pay a third party from your account at (i) a predetermined time; (ii) on a fixed schedule or (iii) upon oral or written orders including orders received through the automated clearing house (ACH). If the transfer or withdrawal is initiated in person, by mail, or at an ATM then there is no limit on the number of payments that may be made directly to you, directly to us for amounts you owe us, or transfers to other accounts you have with us. Withdrawals by phone are also unlimited if you are requesting that a check be mailed to you. Upon the third instance of excessive transfers in any 12-month period, your account may be closed or converted to an account not subject to the aforementioned transfer limitations.

**ATM TRANSACTIONS -** There may be an ATM withdrawal/inquiry service charge fee for ATM transactions (including inquiries) performed at ATMs we do not own or operate.

**AMENDMENTS AND TERMINATION -** We may change any term of this agreement. Rules governing changes in interest rates are provided separately in the Truth-in-Savings disclosure, on the rate sheet or in another document. For other changes, we will give you reasonable notice in writing or by any other method permitted by law. We may also close this account at any time upon reasonable notice to you and tender of the account balance personally or by mail. Items presented for payment after the account is closed may be dishonored. When you close your account, you are responsible for leaving enough money in the account to cover any outstanding items to be paid from the account. Reasonable notice depends on the circumstances, and in some cases such as when we cannot verify your identity or we suspect fraud, it might be reasonable for us to give you notice after the change or account closure becomes effective. For instance, if we suspect fraudulent activity with respect to your account, we might immediately freeze or close your account and then give you notice. If we have notified you of a change in any term of your account and you continue to have your account after the effective date of the change, you have agreed to the new term(s). This "Terms and Conditions of Your Account" and other disclosures including "Electronic Fund Transfers, Your Rights and Responsibilities," "Your Ability To Withdraw Funds," and "Truth-In-Savings Disclosure" are available at any of our branches.

**NOTICES -** Any written notice you give us is effective when we actually receive it, and it must be given to us according to the specific delivery instructions provided elsewhere, if any. We must receive it in time to have a reasonable opportunity to act on it. If the notice is regarding a check or other item, you must give us sufficient information to be able to identify the check or item, including the precise check or item number, amount, date and payee. Written notice we give you is effective when it is deposited in the United States Mail with proper postage and addressed to your mailing address we have on file. Notice to any of you is notice to all of you.

# Centreville Bank®

**STATEMENTS - Your duty to report unauthorized signatures, alterations and forgeries -** You must examine your statement of account with "reasonable promptness." If you discover (or reasonably should have discovered) any unauthorized signatures or alterations, you must promptly notify us of the relevant facts. As between you and us, if you fail to do either of these duties, you will have to either share the loss with us, or bear the loss entirely yourself (depending on whether we used ordinary care and, if not, whether we substantially contributed to the loss). The loss could be not only with respect to items on the statement but other items with unauthorized signatures or alterations by the same wrongdoer.

You agree that the time you have to examine your statement and report to us will depend on the circumstances, but will not, in any circumstance, exceed a total of 30 days from when the statement is first sent or made available to you. You further agree that if you fail to report any unauthorized signatures, alterations or forgeries in your account within 60 days of when we first send or make the statement available, you cannot assert a claim against us on any items in that statement, and as between you and us the loss will be entirely yours. This 60-day limitation is without regard to whether we used ordinary care. The limitation in this paragraph is in addition to that contained in the first paragraph of this section.

Statements may be suppressed for dormancy or inactivity and a fee may be assessed. Please refer to our separate fee schedule.

**Your duty to report other errors or problems -** In addition to your duty to review your statements for unauthorized signatures, alterations and forgeries, you agree to examine your statement with reasonable promptness for any other error or problem - such as an encoding error or an unexpected deposit amount. Also, if you receive or we make available either your items or images of your items, you must examine them for any unauthorized or missing indorsements or any other problems. You agree that the time you have to examine your statement and items and report to us will depend on the circumstances. However, this time period shall not exceed 60 days. Failure to examine your statement and items and report any errors to us within 60 days of when we first send or make the statement available precludes you from asserting a claim against us for any errors on items identified in that statement and as between you and us the loss will be entirely yours.

**Errors relating to electronic fund transfers or substitute checks -** For information on errors relating to electronic fund transfers (e.g., on-line, mobile, debit card or ATM transactions) refer to your Electronic Fund Transfers disclosure and the sections on consumer liability and error resolution. For information on errors relating to a substitute check you received, refer to your disclosure entitled Substitute Checks and Your Rights.

**Duty to notify if statement not received -** You agree to immediately notify us if you do not receive your statement by the date you normally expect to receive it. Not receiving your statement in a timely manner is a sign that there may be an issue with your account, such as possible fraud or identity theft.

**ELECTRONIC STATEMENTS -** Electronic statements may be available.

**ACCOUNT TRANSFER -** This account may not be transferred or assigned without our prior written consent.

**DIRECT DEPOSITS -** If we are required for any reason to reimburse the federal government for all or any portion of a benefit payment that was directly deposited into your account, you authorize us to deduct the amount of our liability to the federal government from the account or from any other account you have with us, without prior notice and at any time, except as prohibited by law. We may also use any other legal remedy to recover the amount of our liability.

**TEMPORARY ACCOUNT AGREEMENT -** If the account documentation indicates that this is a temporary account agreement, each person who signs to open the account or has authority to make withdrawals (except as indicated to the contrary) may transact business on this account. However, we may at some time in the future restrict or prohibit further use of this account if you fail to comply with the requirements we have imposed within a reasonable time.

**SETOFF -** We may (without prior notice and when permitted by law) set off the funds in this account against any due and payable debt any of you owe us now or in the future. If this account is owned by one or more of you as individuals, we may set off any funds in the account against a due and payable debt a partnership owes us now or in the future, to the extent of your liability as a partner for the partnership debt. If your debt arises from a promissory note, then the amount of the due and payable debt will be the full amount we have demanded, as entitled under the terms of the note, and this amount may include any portion of the balance for which we have properly accelerated the due date.

This right of setoff does not apply to this account if prohibited by law. For example, the right of setoff does not apply to this account if: (a) it is an Individual Retirement Account or similar tax-deferred account, or (b) the debt is created by a consumer credit transaction under a credit card plan (but this does not affect our rights under any consensual security interest), or (c) the debtor's right of withdrawal only arises in a representative capacity. We will not be liable for the dishonor of any check when the dishonor occurs because we set off a debt against this account. You agree to hold us harmless from any claim arising as a result of our exercise of our right of setoff.

**AGENCY (Power of Attorney) DESIGNATION -** In the case of a multiple-party account, the owners may use a writing signed by all owners to designate as agent of all owners on an account a person other than an owner. The agent is merely designated to conduct transactions on the owner's behalf. The owner does not give up any rights to act on the account, and the agent may not in any manner affect the rights of the owner or beneficiaries, if any, other than by withdrawing funds from the account. The owner is responsible for any transactions of the agent. We undertake no obligation to monitor transactions to determine that they are on the owner's behalf. The owner may terminate the agency at any time, and the agency is automatically terminated by the death of the owner. However, we may continue to honor the transactions of the agent until: (a) we have received written notice or have actual knowledge of the termination of the agency, and (b) we have a reasonable opportunity to act on that notice or knowledge. We may refuse to accept an agent.

**RESTRICTIVE LEGENDS OR INDORSEMENTS -** The automated processing of the large volume of checks we receive prevents us from inspecting or looking for restrictive legends, restrictive indorsements or other special instructions on every check. For this reason, we are not required to honor any restrictive legend or indorsement or other special instruction placed on checks you write unless we have agreed in writing to the restriction or instruction. Unless we have agreed in writing, we are not responsible for any losses, claims, damages, or expenses that result from your placement of these restrictions or instructions on your checks. Examples of restrictive legends placed on checks are "must be presented within 90 days" or "not valid for more than $1,000.00." The payee's signature accompanied by the words "for deposit only" is an example of a restrictive indorsement.

**CHECK PROCESSING -** We process items mechanically by relying solely on the information encoded in magnetic ink along the bottom of the items. This means that we do not individually examine all of your items to determine if the item is properly completed, signed and indorsed or to determine if it contains any information other than what is encoded in magnetic ink. You agree that we have exercised ordinary care if our automated processing is consistent with general banking practice, even though we do not inspect each item. Because we do not inspect each item, if you write a check to multiple payees, we can properly pay the check regardless of the number of indorsements unless you notify us in writing that the check requires multiple indorsements. We must receive the notice in time for us to have a reasonable opportunity to act on it, and you must tell us the precise date of the check, amount, check number and payee. We are not responsible for any unauthorized signature or alteration that would not be identified by a reasonable inspection of the item. Using an automated process helps us keep costs down for you and all account holders.

**CHECK CASHING -** We may charge a fee for anyone that does not have an account with us who is cashing a check, draft or other instrument written on your account. We may also require reasonable identification to cash such a check, draft or other instrument. We can decide what identification is reasonable under the circumstances and such identification may be documentary or physical and may include collecting a thumbprint or fingerprint.

**WAIVER OF NOTICES -** To the extent permitted by law, you waive any notice of non-payment, dishonor or protest regarding any items credited to or charged against your account. For example, if you deposit an item and it is returned unpaid or we receive a notice of nonpayment, we do not have to notify you unless required by federal Regulation CC or other law.

**ACH AND WIRE TRANSFERS -** This agreement is subject to Article 4A of the Uniform Commercial Code - Fund Transfers as adopted in the state in which you have your account with us. If you originate a fund transfer and you identify by name and number a beneficiary financial institution, an intermediary financial institution or a beneficiary, we and every receiving or beneficiary financial institution may rely on the identifying number to make payment. We may rely on the number even if it identifies a financial institution, person or account other than the one named. You agree to be bound by automated clearing house association rules. These rules provide, among other things, that payments made to you, or originated by you, are provisional until final settlement is made through a Federal Reserve Bank or payment is otherwise made as provided in Article 4A-403(a) of the Uniform Commercial Code. If we do not receive such payment, we are entitled to a refund from you in the amount credited to your account and the party originating such payment will not be considered to have paid the amount so credited. Credit entries may be made by ACH. If we receive a payment order to credit an account you have with us by wire or ACH, we are not required to give you any notice of the payment order or credit.

**RESTRICTED OR BLOCKED TRANSACTIONS -** We reserve the right to restrict and/or block certain transactions.

**FACSIMILE SIGNATURES -** Unless you make advance arrangements with us, we have no obligation to honor facsimile signatures on your checks or other orders. If we do agree to honor items containing facsimile signatures, you authorize us, at any time, to charge you for all checks, drafts, or other orders, for the payment of money, that are drawn on us. You give us this authority regardless of by whom or by what means the facsimile signature(s) may have been affixed so long as they resemble the facsimile signature specimen filed with us, and contain the required number of signatures for this purpose. You must notify us at once if you suspect that your facsimile signature is being or has been misused.

# Centreville Bank®

**PLEDGES -** Each owner of this account may pledge all or any part of the funds in it for any purpose to which we agree. Any pledge of this account must first be satisfied before the rights of any surviving account owner or account beneficiary become effective. For example, if an account has two owners and one of the owners pledges the account (i.e., uses it to secure a debt) and then dies, (1) the surviving owner's rights in this account do not take effect until the debt has been satisfied, and (2) the debt may be satisfied with the funds in this account.

**POWER OF ATTORNEY -** You may wish to appoint an agent to conduct transactions on your behalf. (We, however, have no duty or agreement whatsoever to monitor or insure that the acts of the agent are for your benefit.) This may be done by allowing your agent to sign in that capacity on the signature card or by separate form, such as a power of attorney. A power of attorney continues until your death or the death of the person given the power. If the power of attorney is not "durable," it is revoked when you become incompetent. We may continue to honor the transactions of the agent until: (a) we have received written notice or have actual knowledge of the termination of the authority or the death of an owner, and (b) we have had a reasonable opportunity to act on that notice or knowledge. You agree not to hold us responsible for any loss or damage you may incur as a result of our following instructions given by an agent acting under a valid power of attorney.

**STALE-DATED CHECKS -** We are not obligated to, but may at our option, pay a check, other than a certified check, presented for payment more than six months after its date. If you do not want us to pay a stale-dated check, you must place a stop-payment order on the check in the manner we have described elsewhere.

**FDIC INSURANCE -** Funds in your account(s) with us are insured by the Federal Deposit Insurance Corporation (FDIC) and backed by the full faith and credit of the United States. The amount of insurance coverage you have depends on the number of accounts you have with us that are of different "ownership." An individual account is one unique form of "ownership"; a joint account, a pay-on-death account, and a self directed qualified retirement account (e.g., an IRA) are examples of some of the others. Deposit insurance for a person's self directed qualified retirement account is up to $250,000. (An IRA is a self directed qualified retirement account as is any account where the owner decides where and how to invest the balance.) Funds are insured to $250,000 per depositor for the total of funds combined in all of your other insured accounts with us. If you want a more detailed explanation or additional information, you may ask us or contact the FDIC. You can also visit the FDIC website at www.fdic.gov and click on the Deposit Insurance link. The link includes detailed contact information as well as a deposit insurance estimator.

**INDORSEMENTS -** We may accept for deposit any item payable to you or your order, even if they are not indorsed by you. We may give cash back to any one of you. We may supply any missing indorsement(s) for any item we accept for deposit or collection, and you warrant that all indorsements are genuine.

To ensure that your check or share draft is processed without delay, you must indorse it (sign it on the back) in a specific area. Your entire indorsement (whether a signature or a stamp) along with any other indorsement information (e.g. additional indorsements, ID information, driver's license number, etc.) must fall within 1½" of the "trailing edge" of a check. Indorsements must be made in blue or black ink, so that they are readable by automated check processing equipment.

As you look at the front of a check, the "trailing edge" is the left edge. When you flip the check over, be sure to keep all indorsement information within 1½" of that edge.



It is important that you confine the indorsement information to this area since the remaining blank space will be used by others in the processing of the check to place additional needed indorsements and information. You agree that you will indemnify, defend, and hold us harmless for any loss, liability, damage or expense that occurs because your indorsement, another indorsement or information you have printed on the back of the check obscures our indorsement.

These indorsement guidelines apply to both personal and business checks.

**UNCLAIMED PROPERTY -** The law establishes procedures under which unclaimed property must be surrendered to the state. (We have our own rules regarding dormant or inactive accounts, and may charge a fee for these dormant or inactive accounts, it will be disclosed to you elsewhere.) Please refer to our separate fee schedule. Generally, the funds in your account are considered unclaimed if you have not had any activity or communication with us regarding your account over a period of years. Ask us if you want further information about the period of time or type of activity that will prevent your account from being unclaimed. If your funds are surrendered to the state, you may be able to reclaim them, but your claim must be presented or escheated to the state. We may charge an escheatment fee. Please refer to our separate fee schedule. Once your funds are surrendered, we no longer have any liability or responsibility with respect to the funds.

**DEATH OR INCOMPETENCE -** You agree to notify us promptly if any person with a right to withdraw funds from your account(s) dies or is adjudicated (determined by the appropriate official) incompetent. We may continue to honor your checks, items, and instructions until: (a) we know of your death or adjudication of incompetence, and (b) we have had a reasonable opportunity to act on that knowledge. You agree that we may pay or certify checks drawn on or before the date of death or adjudication of incompetence for up to ten (10) days after your death or adjudication of incompetence unless ordered to stop payment by someone claiming an interest in the account.

**FIDUCIARY ACCOUNTS -** Accounts may be opened by a person acting in a fiduciary capacity. A fiduciary is someone who is appointed to act on behalf of and for the benefit of another. We are not responsible for the actions of a fiduciary, including the misuse of funds. This account may be opened and maintained by a person or persons named as a trustee under a written trust agreement, or as executors, administrators, or conservators under court orders. You understand that by merely opening such an account, we are not acting in the capacity of a trustee in connection with the trust nor do we undertake any obligation to monitor or enforce the terms of the trust or letters.

**CASH TRANSACTION REPORTING -** To help law enforcement agencies detect illegal activities, the law requires all financial institutions to gather and report information on some types of cash transactions. If the information we need to complete the report is not provided, we are required to refuse to handle the transaction. If you have any questions regarding these rules, please contact your local Internal Revenue Service office.

**BACKUP WITHHOLDING/TIN CERTIFICATION -** Federal tax law requires us to report interest payments we make to you of $10 or more in a year, and to include your taxpayer identification number (TIN) on the report (the taxpayer identification number is your social security number if you are an individual). Interest includes dividends, interest and bonus payments for purposes of this rule. Therefore, we require you to provide us with your TIN and to certify that it is correct. In some circumstances, federal law requires us to withhold and pay to the IRS a percentage of the interest that is earned on funds in your accounts. This is known as backup withholding. We will not have to withhold interest payments when you open your account if you certify your TIN and certify that you are not subject to backup withholding due to underreporting of interest. (There are special rules if you do not have a TIN but have applied for one, if you are a foreign person, or if you are exempt from the reporting requirements.) We may subsequently be required to begin backup withholding if the IRS informs us that you supplied an incorrect TIN or that you underreported your interest income.

**CREDIT VERIFICATION -** You agree that we may verify credit and employment history by any necessary means, including preparation of a credit report by a credit reporting agency.

**LOST, DESTROYED, OR STOLEN CERTIFIED, CASHIER'S, OR TELLER'S CHECKS -** Under some circumstances you may be able to assert a claim for the amount of a lost, destroyed, or stolen certified, cashier's or teller's check. To assert the claim: (a) you must be the remitter (or drawer of a certified check) or payee of the check, (b) we must receive notice from you describing the check with reasonable certainty and asking for payment of the amount of the check, (c) we must receive the notice in time for us to have a reasonable opportunity to act on it, and (d) you must give us a declaration (in a form we require) of your loss with respect to the check. You can ask us for a declaration form. Even if all of these conditions are met, your claim may not be immediately enforceable. We may pay the check until the ninetieth day after the date of the check (or date of acceptance of a certified check). Therefore, your claim is not enforceable until the ninetieth day after the date of the check or date of acceptance, and the conditions listed above have been met. If we have not already paid the check, on the day your claim is enforceable we become obligated to pay you the amount of the check. We will pay you in cash or issue another certified check.

At our option, we may pay you the amount of the check before your claim becomes enforceable. However, we will require you to agree to indemnify us for any losses we might suffer. This means that if the check is presented after

# Centreville Bank®

we pay your claim, and we pay the check, you are responsible to cover our losses. We may require you to provide a surety bond to assure that you can pay us if we suffer a loss.

**CHANGING ACCOUNT PRODUCTS -** We may change your account to another product offered by us at any time by giving you notice that your account will be changed to another product on a specified date. If your account is a time account, the change will not occur before the next maturity date of your account. If you do not close your account before the date specified in the notice, we may change your account to that other product on the date specified in the notice.

**LEGAL ACTIONS AFFECTING YOUR ACCOUNT -** If we are served with a subpoena, restraining order, writ of attachment or execution, levy, garnishment, search warrant, or similar order relating to your account (termed "legal action" in this section), we will comply with that legal action. Or, in our discretion, we may freeze the assets in the account and not allow any payments out of the account until a final court determination regarding the legal action. We may do these things even if the legal action involves less than all of you. In these cases, we will not have any liability to you if there are insufficient funds to pay your items because we have withdrawn funds from your account or in any way restricted access to your funds in accordance with the legal action. Any fees or expenses we incur in responding to any legal action (including, without limitation, attorneys' fees and our internal expenses) may be charged against your account. The list of fees applicable to your account(s) provided elsewhere may specify additional fees that we may charge for certain legal actions.

**CHECK STORAGE AND COPIES -** You agree that you will not receive your canceled checks. We will store your canceled checks or copies of them for a reasonable retention period. You may request copies from us in the manner we require.

**TRUNCATION, SUBSTITUTE CHECKS, AND OTHER CHECK IMAGES -** If you truncate an original check and create a substitute check, or other paper or electronic image of the original check, you warrant that no one will be asked to make payment on the original check, a substitute check or any other electronic or paper image, if the payment obligation relating to the original check has already been paid. You also warrant that any substitute check you create conforms to the legal requirements and generally accepted specifications for substitute checks. You agree to retain the original check in conformance with our internal policy for retaining original checks. You agree to indemnify us for any loss we may incur as a result of any truncated check transaction you initiate. We can refuse to accept substitute checks that have not previously been warranted by a bank or other financial institution in conformance with the Check 21 Act. Unless specifically stated in a separate agreement between you and us, we do not have to accept any other electronic or paper image of an original check.

**ACCOUNT SECURITY -**
**Duty to protect account information and methods of access -** It is your responsibility to protect the account number(s) and access device(s) (e.g., an ATM card, point-of-sale card and/or PIN) for your account(s). Do not discuss, compare, or share information about your account number(s) or access device(s) with anyone unless you are willing to give them full use of your money. Checks and electronic withdrawals are processed by automated methods, and anyone who obtains your account number or access device could use it to withdraw money from your account, with or without your permission.

**Positive pay and other fraud prevention services -** Except for consumer electronic fund transfers subject to Regulation E, you agree that if we offer you services appropriate for your account to help identify and limit fraud or other unauthorized transactions against your account, and you reject those services, you will be responsible for any fraudulent or unauthorized transactions which could have been prevented by the services we offered. You will not be responsible for such transactions if we acted in bad faith or to the extent our negligence contributed to the loss. Such services include positive pay or commercially reasonable security procedures. The positive pay service can help detect and prevent check fraud and is appropriate for account holders that issue: a high volume of checks, a lot of checks to the general public, or checks for large dollar amounts.

**Account numbers -** Thieves can encode your account number on a check which looks and functions like an authorized check and can be used to withdraw money from your account. Your account number can also be used to issue a "remotely created check." Like a typical check, a remotely created check (sometimes called a telecheck, preauthorized draft or demand draft) is a draft or check that can be used to withdraw money from your account. Unlike a typical check or draft, however, a remotely created check is not issued by the paying bank and does not contain the signature of the account owner (or a signature purported to be the signature of the account owner). If you have truly authorized the remotely created check (to purchase a service or merchandise, for example), it is properly payable. But it can be risky to authorize a remotely created check. A swindler could issue a remotely created check in an amount greater than you authorized, or issue additional remotely created checks that you have not authorized. We will not know if the withdrawal is unauthorized or in an amount greater than the amount you have authorized. Payment can be made from your account even though you did not contact us directly and order the payment.

**Access devices -** If you furnish your access device and grant actual authority to make transfers to someone who then exceeds that authority, you will be liable for the transfers unless we have been notified that transfers by that person are no longer authorized. Please review the additional information you have received or will receive regarding transfers by access device.

**Blank checks -** You must also take precaution in safeguarding your blank checks. Notify us at once if you think your blank checks have been lost or stolen. As between you and us, if you are negligent in safeguarding your checks, you must bear the loss entirely yourself, or share the loss with us if we failed to use ordinary care which substantially contributes to the loss.

**UNLAWFUL INTERNET GAMBLING NOTICE -** Restricted transactions as defined in Federal Reserve Regulation GG are prohibited from being processed through this account or relationship. Restricted transactions generally include, but are not limited to, those in which credit, electronic fund transfers, checks, or drafts are knowingly accepted by gambling businesses in connection with the participation by others in unlawful Internet gambling.

**TELEPHONIC INSTRUCTIONS -** Unless required by law or we have agreed otherwise in writing, we are not required to act upon instructions you give us via facsimile transmission or leave by voice mail or on a telephone answering machine.

**MONITORING AND RECORDING TELEPHONE CALLS AND CONSENT TO RECEIVE COMMUNICATIONS -** Subject to federal and state law, we may monitor or record phone calls for security reasons, to maintain a record and to ensure that you receive courteous and efficient service. You consent in advance to any such recording.

To provide you with the best possible service in our ongoing business relationship for your account we may need to contact you about your account from time to time by telephone, text messaging or email. However, we first obtain your consent to contact you about your account in compliance with applicable consumer protection provisions in the federal Telephone Consumer Protection Act of 1991 (TCPA), CAN-SPAM Act and their related federal regulations and orders issued by the Federal Communications Commission (FCC).

- Your consent is limited to your account, and as authorized by applicable law and regulations.
- Your consent is voluntary and not conditioned on the purchase of any product or service from us.

With the above understandings, you authorize us to contact you regarding your account throughout its existence using any telephone numbers or email addresses that you have previously provided to us by virtue of an existing business relationship or that you may subsequently provide to us.

This consent is regardless of whether the number we use to contact you is assigned to a landline, a paging service, a cellular wireless service, a specialized mobile radio service, other radio common carrier service or any other service for which you may be charged for the call. You further authorize us to contact you through the use of voice, voice mail and text messaging, including the use of pre-recorded or artificial voice messages and an automated dialing device.

If necessary, you may change or remove any of the telephone numbers or email addresses at any time using any reasonable means to notify us.

**EMAIL INSTRUCTIONS -** Unless we have agreed otherwise in writing, we are not required to act upon instructions you give us via email transmission.

**CLAIM OF LOSS -** If you claim a credit or refund because of a forgery, alteration, or any other unauthorized withdrawal, you agree to cooperate with us in the investigation of the loss, including giving us an affidavit containing whatever reasonable information we require concerning your account, the transaction, and the circumstances surrounding the loss. You will notify law enforcement authorities of any criminal act related to the claim of lost, missing, or stolen checks or unauthorized withdrawals. We will have a reasonable period of time to investigate the facts and circumstances surrounding any claim of loss. Unless we have acted in bad faith, we will not be liable for special or consequential damages, including loss of profits or opportunity, or for attorneys' fees incurred by you.

You agree that you will not waive any rights you have to recover your loss against anyone who is obligated to repay, insure, or otherwise reimburse you for your loss. You will pursue your rights or, at our option, assign them to us so that we may pursue them. Our liability will be reduced by the amount you recover or are entitled to recover from these other sources.

**EARLY WITHDRAWAL PENALTIES (and involuntary withdrawals) -** We may impose early withdrawal penalties on a withdrawal from a time account even if you don't initiate the withdrawal. For instance, the early withdrawal penalty may be imposed if the withdrawal is caused by our setoff against funds in the account or as a result of an attachment or other legal process. We may close your account and impose the early withdrawal penalty on the entire account balance in the event of a partial early withdrawal. See your notice of penalty for early withdrawals for additional information.

**ADDRESS OR NAME CHANGES -** You are responsible for notifying us of any change in your address or your name. Unless we agree otherwise, change of address or name must be made in writing by at least one of the account holders. Informing us of your address or name change on a check reorder form is not sufficient. We will attempt to communicate with you only by use of the most recent address you have provided to us. If provided elsewhere, we may impose a service fee if we attempt to locate you.

CB Rev. 6/20

# Centreville Bank®

**RESOLVING ACCOUNT DISPUTES** - We may place an administrative hold on the funds in your account (refuse payment or withdrawal of the funds) if it becomes subject to a claim adverse to (1) your own interest; (2) others claiming an interest as survivors or beneficiaries of your account; or (3) a claim arising by operation of law. The hold may be placed for such period of time as we believe reasonably necessary to allow a legal proceeding to determine the merits of the claim or until we receive evidence satisfactory to us that the dispute has been resolved. We will not be liable for any items that are dishonored as a consequence of placing a hold on funds in your account for these reasons.

**UTMA ACCOUNTS** - Under the Uniform Transfers to Minors Act, the funds in the account are owned by the child who has unconditional use of the account when he or she reaches the age of majority. Before that time, the account may be accessed only by the custodian (or successor custodian), and the funds must be used for the benefit of the child. We, however, have no duty or agreement whatsoever to monitor or insure that the acts of the custodian (or successor custodian) are for the child's benefit. We are not responsible to monitor age or eligibility for an UTMA account, even though our records may include the minor's date of birth. It is the custodian's responsibility to properly distribute the funds in the account upon the minor's death or attainment of the age of majority. For this type of account, the child's SSN/TIN is used for the Backup Withholding Certification.

**TRANSACTIONS BY MAIL** - You may deposit checks or drafts by mail. You should indorse the item being sent through the mail with the words "For Deposit Only" and should include your correct account number underneath to ensure the item is credited to the correct account. You should use the pre-encoded deposit slips found in your checkbook. If you do not use your deposit slip or provide us with instructions indicating how or where the item should be credited, we may apply it to any account or any loan balance you have with us or we may return the item to you. Receipts for such transactions will be mailed to you only if a self-addressed stamped envelope is provided. Following your deposit, examine your statement carefully or call us to ensure that we received the item. Do not send cash through the mail for deposit.

**FUNDS TRANSFERS** - The terms used in this section have the meaning given to them in Article 4A of the Uniform Commercial Code - Funds Transfers (UCC 4A). This section will generally not apply to you if you are a consumer. However, even if you are a consumer, this section will apply to that part of any funds transfer that is conducted by Fedwire. This section is subject to UCC 4A as adopted in the state in which you have your deposit with us. This agreement is also subject to all clearing house association rules, rules of the Board of Governors of the Federal Reserve System and their operating circulars. If any part of this agreement is determined to be unenforceable, the rest of the agreement remains effective. This agreement controls funds transfers unless supplemented or amended in a separate written agreement signed by us. This agreement does not apply to a funds transfer if any part of the transfer is governed by the Electronic Fund Transfer Act of 1978 (EFTA), except this agreement does apply to a funds transfer that is a remittance transfer as defined in EFTA unless the remittance transfer is an electronic fund transfer as defined in EFTA.

**Funds transfer** - A funds transfer is the transaction or series of transactions that begin with the originator's payment order, made for the purpose of making payment to the beneficiary of the order. A funds transfer is completed by the acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's order. You may give us a payment order orally, electronically, or in writing, but your order cannot state any condition to payment to the beneficiary other than the time of payment. Credit entries may be made by ACH.

**Authorized account** - An authorized account is a deposit account you have with us that you have designated as a source of payment of payment orders you issue to us. If you have not designated an authorized account, any account you have with us is an authorized account to the extent that payment of the payment order is not inconsistent with the use of the account.

**Acceptance of your payment order** - We are not obligated to accept any payment order that you give us, although we normally will accept your payment order if you have a withdrawable credit in an authorized account sufficient to cover the order. If we do not execute your payment order, but give you notice of our rejection of your payment order after the execution date or give you no notice, we are not liable to pay you as restitution any interest on a withdrawable credit in a non-interest-bearing account.

**Cutoff time** - If we do not receive your payment order or communication canceling or amending a payment order before our cutoff time on a funds transfer day for that type of order or communication, the order or communication will be deemed to be received at the opening of our next funds transfer business day.

**Payment of your order** - If we accept a payment order you give us, we may receive payment by automatically deducting from any authorized account the amount of the payment order plus the amount of any expenses and charges for our services in execution of your payment order. We are entitled to payment on the payment or execution date. Unless your payment order specifies otherwise, the payment or execution date is the funds transfer date we receive the payment order. The funds transfer is completed upon acceptance by the beneficiary's bank. Your obligation to pay your payment order is excused if the funds transfer is not completed, but you are still responsible to pay us any expenses and charges for our services. However, if you told us to route the funds transfer through an intermediate bank, and we are unable to obtain a refund because the intermediate bank that you designated has suspended payments, then you are still obligated to pay us for the payment order. You will not be entitled to interest on any refund you receive because the beneficiary's bank does not accept the payment order.

**Security procedure** - As described more fully in a separate writing, the authenticity of a payment order or communication canceling or amending a payment order issued in your name as sender may be verified by a security procedure. You affirm that you have no circumstances which are relevant to the determination of a commercially reasonable security procedure unless those circumstances are expressly contained in a separate writing signed by us. You may choose from one or more security procedures that we have developed, or you may develop your own security procedure if it is acceptable to us. If you refuse a commercially reasonable security procedure that we have offered you, you agree that you will be bound by any payment order issued in your name, whether or not authorized, that we accept in good faith and in compliance with the security procedure you have chosen.

**Duty to report unauthorized or erroneous payment** - You must exercise ordinary care to determine that all payment orders or amendments to payment orders that we accept that are issued in your name are authorized, enforceable, in the correct amount, to the correct beneficiary, and not otherwise erroneous. If you discover (or with reasonable care should have discovered) an unauthorized, unenforceable, or erroneously executed payment order or amendment, you must exercise ordinary care to notify us of the relevant facts. The time you have to notify us will depend on the circumstances, but that time will not in any circumstance exceed 14 days from when you are notified of our acceptance or execution of the payment order or amendment or that your account was debited with respect to the order or amendment. If you do not provide us with timely notice you will not be entitled to interest on any refundable amount. If we can prove that you failed to perform either of these duties with respect to an erroneous payment and that we incurred a loss as a result of the failure, you are liable to us for the amount of the loss not exceeding the amount of your order.

**Identifying number** - If your payment order identifies an intermediate bank, beneficiary bank, or beneficiary by name and number, we and every receiving or beneficiary bank may rely upon the identifying number rather than the name to make payment, even if the number identifies an intermediate bank or person different than the bank or beneficiary identified by name. Neither we nor any receiving or beneficiary bank have any responsibility to determine whether the name and identifying number refer to the same financial institution or person.

**Record of oral or telephone orders** - You agree that we may, if we choose, record any oral or telephone payment order or communication of amendment or cancelation.

**Notice of credit** - If we receive a payment order to credit an account you have with us, we are not required to provide you with any notice of the payment order or the credit.

**Provisional credit** - You agree to be bound by the automated clearing house association operating rules that provide that payments made to you or originated by you by funds transfer through the automated clearing house system are provisional until final settlement is made through a Federal Reserve Bank or otherwise payment is made as provided in Article 4A-403(a) of the Uniform Commercial Code.

**Refund of credit** - You agree that if we do not receive payment of an amount credited to your account, we are entitled to a refund from you in the amount credited and the party originating such payment will not be considered to have paid the amount so credited.

**Amendment of funds transfer agreement** - From time to time we may amend any term of this agreement by giving you reasonable notice in writing. We may give notice to anyone who is authorized to send payment orders to us in your name, or to anyone who is authorized to accept service.

**Cancelation or amendment of payment order** - You may cancel or amend a payment order you give us only if we receive the communication of cancelation or amendment before our cutoff time and in time to have a reasonable opportunity to act on it before we accept the payment order. The communication of cancelation or amendment must be presented in conformity with the same security procedure that has been agreed to for payment orders.

**Intermediaries** - We are not liable for the actions of any intermediary, regardless of whether or not we selected the intermediary. We are not responsible for acts of God, outside agencies, or nonsalaried agents.

**Limit on liability** - You waive any claim you may have against us for consequential or special damages, including loss of profit arising out of a payment order or funds transfer, unless this waiver is prohibited by law. We are not responsible for attorney fees you might incur due to erroneous execution of payment order.

**Erroneous execution** - If we receive an order to pay you, and we erroneously pay you more than the amount of the payment order, we are entitled to recover from you the amount in excess of the amount of the payment order, regardless of whether you may have some claim to the excess amount against the originator of the order.

# Centreville Bank®

**Objection to payment -** If we give you a notice that reasonably identifies a payment order issued in your name as sender that we have accepted and received payment for, you cannot claim that we are not entitled to retain the payment unless you notify us of your objection to the payment within 60 days of our notice to you.

**INTERNATIONAL ACH TRANSACTIONS -** Financial institutions are required by law to scrutinize or verify any international ACH transaction (IAT) that they receive against the Specially Designated Nationals (SDN) list of the Office of Foreign Assets Control (OFAC). This action may, from time to time, cause us to temporarily suspend processing of an IAT and potentially affect the settlement and/or availability of such payments.

## YOUR ABILITY TO WITHDRAW FUNDS

This policy statement applies to "transaction" accounts and savings accounts. Transaction accounts, in general, are accounts which permit an unlimited number of payments to third persons and an unlimited number of telephone and preauthorized transfers to other accounts of yours with us. Checking accounts are the most common transaction accounts. Feel free to ask us whether any of your other accounts might also be under this policy.

Our policy is to make funds from your cash and electronic direct deposits available to you on the same day we receive your deposit. At that time, you can withdraw the funds in cash and we will use the funds to pay checks that you have written.

Our policy is to make funds from checks for less than or equal to $6,000.00 available to you as follows: the first $300.00 of your deposit will be available by the first business day following the day of deposit and the remainder will be available by the 2nd business following the day your deposit is received. At that time, you can withdraw the funds in cash and the funds will be used to pay checks that you have written.

Our policy is to make funds from checks greater than $6,000.00 available to you as follows: the first $300.00 of your deposit will be available by the first business day following the day of deposit, $6,000.00 will be available by the second business following the day of your deposit and the remainder will be available by the 7th business day.

Please remember that even after we have made funds available to you, and you have withdrawn the funds, you are still responsible for checks you deposit that are returned to us unpaid and for any other problems involving your deposit.

For determining the availability of your deposits, every day is a business day, except Saturdays, Sundays, and federal holidays. If you make a deposit before closing on a business day that we are open, we will consider that day to be the day of your deposit. However, if you make a deposit after closing or on a day we are not open, we will consider that the deposit was made on the next business day we are open.

### LONGER DELAYS MAY APPLY

**Safeguard exceptions.** In addition, funds you deposit by check may be delayed for a longer period under the following circumstances:

We believe a check you deposit will not be paid.
You deposit checks totaling more than $6,000 on any one day.
You redeposit a check that has been returned unpaid.
You have overdrawn your account repeatedly in the last six months.
There is an emergency, such as failure of computer or communications equipment.

We will notify you if we delay your ability to withdraw funds for any of these reasons, and we will tell you when the funds will be available. They will generally be available no later than the seventh business day after the day of your deposit.

Deposits made at a Centreville Bank ATM prior to 8:30pm on any business day will be available the first business day after the day of the deposit.

Cash deposited to an envelope-free ATM/ITM will be available to you on the same business day that we receive your deposit.

### SPECIAL RULES FOR NEW ACCOUNTS

If you are a new customer, the following special rules will apply during the first 30 days your account is open.

Funds from electronic direct deposits, cash and wire transfers to your account will be available on the day we receive the deposit. Funds from the first $6,000 of a day's total deposits of cashier's, certified, teller's, traveler's, and federal, state and local government checks will be available on the first business day after the day of your deposit if the deposit meets certain conditions. For example, the checks must be payable to you. The excess over $6,000 will be available on the seventh business day after the day of your deposit. If your deposit of these checks (other than a U.S. Treasury check) is not made in person to one of our employees, the first $6,000 will not be available until the second business day after the day of your deposit.

Funds from all other checks will be available on the seventh business day after the day of your deposit. At that time, you can withdraw the funds in case and we will use the funds to pay checks that you have written.

**MEMBER FDIC**

## Overdraft Privilege Service
## Terms of Use

**Centreville Bank** ("we, us or our") offers the Overdraft Privilege Service. If your account qualifies for Overdraft Privilege, we will consider, without obligation on our part, paying items for which your account has insufficient or unavailable funds, instead of automatically returning those items unpaid. This document explains how Overdraft Privilege operates.

**Transactions that May Qualify for Overdraft Privilege:** An overdraft occurs when you do not have enough money in your account to cover a transaction. Although there are many reasons why your account might become overdrawn, most overdrafts result from the following:

- You request a withdrawal in person, write a check, swipe your debit card or initiate an electronic funds transfer in an amount that exceeds the amount of funds available in your account;
- You deposit a check or other item into your account and the item is returned unpaid, which causes a negative balance in your account once your balance is reduced by the amount of the returned check;
- You have inadequate funds in your account when we assess a fee or service charge; or
- You initiate a transaction before funds deposited into your account are "available" or "finally paid" according to our Funds Availability Policy. For example, if you deposit a check into your account, the proceeds of that check may not be available to you for up to five days after you deposit the check. If you do not have sufficient funds in your account—independent of the check—to cover the transaction, you will incur an overdraft.

**Transaction Types:** The Overdraft Privilege Service applies to a variety of transactions, including checks and other transactions made using your checking account number, automatic bill payments, ATM transactions and everyday debit card transactions; however, we will not include ATM and everyday debit card transactions within our Overdraft Privilege Service without first receiving your affirmative consent to do so. Absent your affirmative consent, ATM and everyday debit card transactions generally will not be paid under Overdraft Privilege.

**Participation in Overdraft Privilege is not mandatory:** You may opt-out of the service any time by notifying one of our service representatives. Furthermore, you may revoke your affirmative consent to have ATM and everyday debit card transactions considered for payment under Overdraft Privilege without removing other items from the service. Simply inform us of your preference.

**Discretionary Service:** As noted above, we retain full discretion to decline to pay any item under the Overdraft Privilege Program. The means we can refuse to pay any overdraft for any reason. Even if we decide to pay an overdraft item, absent an agreement to the contrary, such payment does not create any duty to pay future overdrafts. If we do not authorize and pay an overdraft, your transaction will be declined and we may assess NSF fees on your account in accordance with your account agreement and the fee schedule in effect at the time of the overdraft.

**Fees:** For each overdraft, we pay, we will charge the standard per item Overdraft/NSF Fee set forth in our fee schedule. In addition, under our standard overdraft practices:

- There is a limit of four (4) per item overdraft fees we will charge you for overdrawing your account on any business day.
- The Bank does not charge a checking account participating in the Overdraft Privilege Service an Overdraft/NSF fee for transactions that overdraw an account by an aggregate amount of $5 or less.
- We will notify you by mail if we pay or return any insufficient funds items on your account; however, we have no obligation to notify you before we pay or return any item. The amount of any overdrafts, including our fees, is due and payable immediately or on demand.

**Account Closure:** Any account with a sustained negative balance of 45 days or greater may be closed within 60 days. We may report information about your account to the credit bureaus. Account closures due to negative balances sustained for 45 days or greater may be reflected in your credit report.

**Eligible Accounts:** Overdraft Privilege is a discretionary service and is generally limited to a $600 overdraft (negative) balance for eligible personal checking accounts; or a $1,200 overdraft (negative) balance for eligible business checking accounts. Please note that per item overdraft fees count toward your Overdraft Privilege Limit. We may in our sole discretion limit the number of accounts eligible for Overdraft Privilege to one account per household or per taxpayer identification number. Further, Overdraft Privilege is usually extended only to accounts in good standing. An account in good standing exhibits, but is not limited to, the following characteristics:

- The account has been open for at least thirty (30) days;
- The account has deposits totaling at least $400 or more within the first thirty (30) days of account opening.
- The account owner is current on all loan obligations with us; and
- The account is not subject to any legal or administrative order or levy, such as bankruptcy or tax lien.

**Other overdraft protection services offered in addition to Overdraft Privilege:** Overdraft line of credit and overdraft protection linked to another account of yours with us, such as a savings account. If you apply and are approved for these optional services, you may save money on the total fees you pay us for overdraft protection services.

Overdrafts should not be used to pay ordinary or routine expenses and you should not rely on overdrafts to cover these expenses. If at any time, you feel you need help with your financial obligations, please contact us at 401-821- 9100 to discuss your options or speak with one of our customer service representatives at your local branch office. Electronic balance inquiries will not include the amount of any available overdraft credit.

Revision date 08/01/2018

**Centreville Bank**